J. R. CARVER, Administrator of the Estate of Benjamin Scott Carver v. PHYLLIS CARVER

No. 658PA82

(Filed 30 April 1984)

1. **Appeal and Error §§ 21, 68— Supreme Court's denial of further review of Court of Appeals decision—no law of the case**

     The Supreme Court's denial of defendant's petition for further review of a Court of Appeals decision that parental immunity did not bar an action for the wrongful death of a child did not make that decision the law of the case in the

Carver v. Carver

Supreme Court and did not mean that the Supreme Court had determined that the decision of the Court of Appeals was correct.

**2. Death § 3.3; Parent and Child § 2.1— automobile accident—wrongful death action against child's mother—parental immunity inapplicable**

The doctrine of parental immunity did not bar an action by the estate of a child against the child's mother for the wrongful death of the child in an automobile accident since G.S. 1-539.21 and G.S. 28A-18-2 together abrogate parental immunity in wrongful death actions arising out of the operation of motor vehicles.

**3. Actions § 5; Automobiles and Other Vehicles § 108; Death § 11— family purpose automobile—mother's negligence in death of child not imputed to father—father's right to share in recovery against mother**

Where a minor child was killed in an accident caused solely by his mother's negligence in the operation of a family purpose automobile owned by the father, the active negligence of the mother will not be imputed to the father under the family purpose doctrine so as to bar the father from sharing in any recovery by the child's estate against the mother under the principle that no one should profit by his own wrong. However, the mother cannot share in any recovery by her child's estate based on her own negligence.

**4. Actions § 5; Death §§ 7.3, 8, 11— wrongful death of child—negligence by mother—damages recoverable**

In a wrongful death action by the estate of a child against the child's mother in which the parents are the beneficiaries of the estate and the mother is precluded from sharing in the recovery based on her own negligence, only the father's losses as a result of the death of the child may be considered in assessing damages under G.S. 28A-18-2(b)(4), and whatever damages are awarded under this section need not be reduced but are fully recoverable by the estate to be ultimately enjoyed by the father. Since the reasonable funeral expenses of the decedent are primarily the responsibility of the father, this item of damages need not be reduced because the mother is precluded from sharing in the recovery. However, any damages awarded for decedent's pain and suffering should be reduced by half, the mother's pro rata share of these damages.

Justice MARTIN did not participate in the consideration or decision of this case.

Justice MEYER dissenting.

ON writ of certiorari to review a summary judgment for defendant entered by *Judge Allen,* presiding in GASTON Superior Court, on 6 October 1982.

*Ronald Williams for plaintiff appellant.*

*Golding, Crews, Meekins, Gordon & Gray by James P. Crews for defendant appellee.*

EXUM, Justice.

This is a wrongful death action by the estate of a two-month-old child against the child's mother. The allegations are that the child was killed in an automobile accident caused by the mother's negligence. The child is survived by his mother, the defendant; his father, who was not present at the time of the accident; and three siblings. Two questions arise: (1) Does the doctrine of parental immunity bar this action? (2) Should the active negligence of one parent, if any, be imputed to the other parent under the family purpose doctrine so as to bar all recovery by the child's estate under the principle that no one should profit by his wrong? We answer both questions negatively, vacate the summary judgment for defendant, and remand for further proceedings.

I.

Luther Carver, who is not a party to this action, and defendant, Phyllis Carver, are husband and wife and parents of the deceased, Benjamin Scott Carver. On 8 April 1980 Mrs. Carver was operating the family automobile in which the deceased child was a passenger. While they traveled along Ike Lynch Road in Gaston County the automobile overturned, and the child was killed. His parents and three older siblings survive him. Mr. Carver owned the automobile which was used for family purposes, and Mrs. Carver was using it for those purposes at the time of the accident.

Initially, defendant successfully moved in the trial court to dismiss this action on the basis of the doctrine of parental immunity. The Court of Appeals reversed, holding that because N.C. Gen. Stat. § 1-539.21, effective 1 October 1975,[1] abolished the doctrine of parental immunity in actions for personal injury and property damage arising out of the operation of motor vehicles, wrongful death actions arising out of the operation of motor vehicles would not be barred by the doctrine. *Carver v. Carver*, 55 N.C. App. 716, 286 S.E. 2d 799, *disc. rev. denied*, 305 N.C. 584, 292 S.E. 2d 569 (1982). Defendant then answered, engaged in discovery, and moved for summary judgment.

---

1. 1975 Session Laws, ch. 685, § 2.

The motion was grounded on two propositions: First, that defendant's negligence, if any, was imputed to the child's father under the family purpose doctrine and second, since only the parents would be entitled to share in any recovery, there could in fact be no recovery under the principle that no person should profit by his wrong. Judge Allen allowed this motion and dismissed the action. Plaintiff failed to give timely notice of appeal, and the Court of Appeals denied his petition for writ of certiorari. Plaintiff then applied to this Court for a writ of certiorari, and we granted our writ on 2 February 1983 to review the correctness of Judge Allen's ruling. Defendant cross-assigns as error the Court of Appeals' earlier decision that parental immunity did not bar this wrongful death action.

## II.

[1]  At the outset we note our agreement with defendant's position that we are not bound to follow the decision of the Court of Appeals on the first appeal of this matter that the action was not barred by the doctrine of parental immunity. Our denial of defendant's petition for further review of the Court of Appeals' decision on this point does not make that decision the law of the case *in this Court* nor does it mean "that this Court has determined that the decision of the Court of Appeals is correct." *Peaseley v. Virginia Iron, Coal & Coke Co.*, 282 N.C. 585, 592, 194 S.E. 2d 133, 139 (1973). *See also Spartan Leasing, Inc. v. Brown*, 285 N.C. 689, 208 S.E. 2d 649 (1974).

[2]  Although we could now decide the question differently, we conclude that the Court of Appeals' decision on the parental immunity issue was well reasoned and altogether correct. The Court of Appeals, in an opinion by Judge Wells, concurred in by Judges Arnold and (now Justice) H. C. Martin, reasoned as follows: N.C. Gen. Stat. § 28A-18-2 (successor to 28-173 and 28-174) authorizes wrongful death actions when death "is caused by the wrongful act, neglect or default of another, such as would, if the injured person had lived, have entitled him to an action for damages therefor." Had the deceased child in this case lived, he would have had a cause of action against his mother for any injuries caused by his mother's negligent operation of the automobile by virtue of N.C. Gen. Stat. § 1-539.21 which provides:

**Abolition of parent-child immunity in motor vehicle cases.**
The relationship of parent and child shall not bar the right of
action by a minor child against a parent for personal injury
or property damage arising out of the operation of a motor
vehicle owned or operated by such parent.

Since parental immunity would not have barred a personal injury
action brought by the child had he lived, it likewise does not bar
this wrongful death action brought by his estate.

The Court of Appeals correctly recognized that, in determin-
ing whether any wrongful death action is maintainable, this Court
has consistently analyzed the question in terms of whether the
deceased had he lived would have had a claim against defendant
for injuries inflicted. If so, then the estate of the deceased may
maintain an action for wrongful death; if not, then the action for
wrongful death will not lie. *Raftery v. Vick Construction Co.,* 291
N.C. 180, 230 S.E. 2d 405 (1976) (wrongful death action main-
tainable because personal injury action would have been had de-
ceased lived); *Skinner v. Whitley,* 281 N.C. 476, 189 S.E. 2d 230
(1972). Indeed, in *Skinner,* decided before the enactment of N.C.
Gen. Stat. § 1-539.21, this Court held that the estates of two
deceased minor children could not maintain wrongful death ac-
tions against the estate of their deceased father when all were
killed in an automobile operated by the father. The decision's ra-
tionale was that since the children's actions for personal injuries,
had they lived, would have been barred by the parental immunity
doctrine, their wrongful death actions were likewise barred. The
Court said, "This conclusion follows as a matter of law unless the
reciprocal immunity rule between parent and unemancipated
minor child is repudiated or modified in this jurisdiction." 281
N.C. at 479, 189 S.E. 2d at 232. The Court went on to suggest that
if the parental immunity doctrine were to be changed, it ought to
be by legislation rather than adjudication. The legislature ap-
parently responded to this suggestion in 1975 by enacting N.C.
Gen. Stat. § 1-539.21.

Since, therefore, as the Court of Appeals reasoned, N.C. Gen.
Stat. § 1-539.21 has abolished the doctrine of parental immunity
in personal injury and property damage cases arising out of a
parent's operation of a motor vehicle, the doctrine is no longer a
bar to wrongful death actions by the deceased child's estate

which likewise arises out of a parent's operation of a motor vehicle.

Defendant misses the point when she argues that because N.C. Gen. Stat. § 1-539.21 does not expressly mention wrongful death actions and expressly refers only to "personal injury or property damage" actions, the legislature intended to abolish parental immunity only in personal injury or property damage claims. It is not N.C. Gen. Stat. § 1-539.21 standing alone which abrogates parental immunity in wrongful death actions arising out of operation of motor vehicles; it is this statute and N.C. Gen. Stat. § 28A-18-2 read *in pari materia*, which bring about this result. It is, of course, a fundamental canon of statutory construction that statutes which are *in pari materia*, *i.e.*, which relate or are applicable to the same matter or subject, although enacted at different times must be construed together in order to ascertain legislative intent. *Great Southern Media, Inc. v. McDowell County*, 304 N.C. 427, 284 S.E. 2d 457 (1981); *In re Arthur*, 291 N.C. 640, 231 S.E. 2d 614 (1977); *State Highway Commission v. Hemphill*, 269 N.C. 535, 153 S.E. 2d 22 (1967); Black's Law Dictionary 711 (rev. 5th ed. 1979); Ballentine's Law Dictionary 657 (1948).

III.

[3] We turn now to the second issue before us: Whether defendant's negligence, if any, in causing the death of the child is imputed to the child's father, who is also defendant's husband and owner of the car, under the family purpose doctrine so as to bar recovery in this wrongful death action. The parties agree that the automobile being operated by defendant was a family purpose automobile owned by the father-husband and was being operated by defendant-mother as a family purpose car. Defendant's argument in support of allowing her motion for summary judgment is this: Proceeds recovered in a wrongful death action do not constitute part of the estate of the deceased generally except for certain limited purposes. "The amount recovered in such action is not liable to be applied as assets, in the payment of debts or legacies, except as to burial expenses of the deceased, and reasonable hospital and medical expenses not exceeding Five Hundred Dollars ($500.00) incident to the injury resulting in death; . . . but shall be disposed of as provided in the Intestate Succession Act." N.C. Gen. Stat. § 28A-18-2. The Intestate Succession

Act provides that if the intestate "is survived by both parents, they shall take in equal shares, or if either parent is dead, the surviving parent shall take the entire share." N.C. Gen. Stat. § 29-15(3). The child here is survived by both parents. Only the parents, therefore, will be entitled to share in any recovery made in this action. Since both parents are responsible for the child's death, the mother through her active negligence and the father through imputed negligence under the family purpose doctrine, there can be no recovery because of the principle that no person should be permitted to profit by his or her own wrong.

All propositions in the foregoing argument, except for the proposition that the mother's negligence is imputed to the father, are supported by our cases:

In *In re Estate of Ives*, 248 N.C. 176, 102 S.E. 2d 807 (1958), the mother was killed in an automobile collision while riding as a passenger in one of the automobiles being operated by her son, Sam Ives. The decedent was survived by four sons, in addition to Sam. Her estate settled with Sam's liability carrier and a sum of money was paid into the estate pursuant to this settlement. In a petition before the clerk for advice on how to distribute the proceeds of this settlement, the clerk ruled that the sums should be divided equally between all of the deceased's sons except Sam. On Sam's appeal the superior court, and subsequently this Court, affirmed the clerk's judgment. This Court said:

> In an action to recover damages for wrongful death the real party in interest is the beneficiary under the statute for whom recovery is sought, and not the administrator. *Davenport v. Patrick*, 227 N.C. 686, 44 S.E. 2d 203.

> 'It is a maxim of law, recognized and established, that no man shall take advantage of his own wrong; and this maxim, which is based on elementary principles, is fully recognized in courts of law and equity, and, indeed, admits of illustration from every branch of legal procedure.' Broom's Legal Maxims, Tenth Ed., 191.

> This maxim embodied in the common law, and constituting an essential part thereof, is stated in the text books and reported cases. It has its foundation in universal law administered in all civilized lands, for without its recognition

and enforcement by the courts their judgments would rightly excite public indignation. This maxim has been adopted as public policy in this state and we have decided in many cases instituted to recover damages for wrongful death that no beneficiary under the statute for whom recovery is sought will be permitted to enrich himself by his own wrong. *Davenport v. Patrick, supra; Pearson v. Stores Corp.*, 219 N.C. 717, 14 S.E. 2d 811; *Goldsmith v. Samet*, 201 N.C. 574, 160 S.E. 835; *Harton v. Telephone Co.*, 141 N.C. 455, 54 S.E. 299; *Davis v. R.R.*, 136 N.C. 115, 48 S.E. 591. The right of a person otherwise entitled to receive the money paid for wrongful death, or to share in the distribution of such a sum paid, will be denied where the death of the decedent was caused by such person's negligence. *Davenport v. Patrick, supra; Goldsmith v. Samet, supra.*

*Id.* at 181-82, 102 S.E. 2d at 811.

In *Cox v. Shaw*, 263 N.C. 361, 139 S.E. 2d 676 (1965), a husband and wife and their son were riding together in the husband's family purpose automobile. The son, an unemancipated minor living in the home of his parents, was driving. This automobile collided with another automobile, and in the collision the mother and son were killed. The mother's estate brought a wrongful death action against the driver of the other car, the son's estate and the husband-father. The trial court entered judgment on the pleadings in favor of the husband-father and the son's estate. This Court affirmed the ruling dismissing the action against the son's estate on the ground of family immunity, holding that a parent or the parent's estate could not maintain an action for negligence against an unemancipated child or the child's estate. The Court reversed the decision dismissing the action against the husband-father.

In reaching this decision the Court recognized that the theory of liability against the husband-father was *respondeat superior.* The agency relationship arose in two ways: First, the husband-father as a passenger in his own automobile "had the right to control and direct its operation by the driver, his son." *Id.* at 363, 139 S.E. 2d at 678. Second, "under the family purpose doctrine . . . negligence would have been equally imputable to

the father had he not been present." *Id.* at 363-64, 139 S.E. 2d at 678.

The husband-father argued that as principal being sued only on a theory of imputed liability he should be "entitled to avail himself of his son's immunity." *Id.* at 364, 139 S.E. 2d at 678. The Court, in a thoughtful and well-researched opinion by Justice (later Chief Justice) Sharp, rejected this argument. It relied on the principle established in cases from other jurisdictions and embodied in Restatement (Second) of Agency § 217 (1958), that a principal otherwise liable for the negligence of his agent may not take advantage of an immunity which is personal to the agent. The Court held, further, that although a principal ordinarily has a right of action over against his agent for indemnity, this would not be true where the principal was the father and the agent the son because of the immunity of the son from suit by the father. The Court expressly noted that its decision permitting the action of the wife's estate against the husband-father "does not lift the immunity of the son's estate from suit by the father so as to authorize an action by him for indemnity should plaintiff recover in this action." 263 N.C. at 368, 139 S.E. 2d at 681.

Finally, the Court in *Cox* held that it would not permit "defendant husband-father, as a distributee of the estate of his wife, to profit from his own wrong." *Id.* The Court said:

> Where the beneficiary of an estate is culpably responsible for the decedent's death, he may not share in the administrator's recovery for wrongful death. The identity of beneficiaries entitled to share in the recovery is determined as of the time of decedent's death. *Davenport v. Patrick,* 227 N.C. 686, 44 S.E. 2d 203. Here, had plaintiff's intestate died a natural death, her beneficiaries would have been her husband, her son, and her daughter. G.S. 29-14(2). Under the circumstances, however, only the daughter will be entitled to benefit from any recovery which the administrator may obtain in this action. Therefore, should the jury return a verdict in plaintiff's favor, the court will enter judgment for only one-third of the amount.

*Id.*

*Cox* and other cases firmly established the principle that in wrongful death actions where recovery depends on establishing the liability of a party who is also a beneficiary of the decedent's estate, any recovery obtained shall be reduced by that party-beneficiary's pro rata share and that party-beneficiary is precluded from participating in the recovery; but the action may be maintained on behalf of other beneficiaries, if any. *Davenport v. Patrick,* 227 N.C. 686, 44 S.E. 2d 203 (1947); *Pearson v. National Manufacture & Stores Corp.,* 219 N.C. 717, 14 S.E. 2d 811 (1941). Further, if recovery in a wrongful death action depends upon establishing the liability of a party who is the sole beneficiary of the decedent's estate, the action may not be maintained at all. *Davenport,* 227 N.C. 686, 44 S.E. 2d 203; *Goldsmith v. Samet,* 201 N.C. 574, 160 S.E. 835 (1931). In *Goldsmith,* the son's estate brought wrongful death action against the mother, alleging the negligent operation of an automobile by the father who was acting as the mother's agent. A demurrer to the complaint was sustained on appeal on the ground, first, that the action was barred by the doctrine of parental immunity and, second, that "if recovery were allowed, the amount would be divided between the two wrongdoers." *Id.* at 575, 160 S.E. at 835.

It is important to note that in all of the above cases the Court was concerned with not permitting a beneficiary of an estate to share in a wrongful death recovery when the recovery itself depended on establishing the liability of the beneficiary as a party-defendant or when the beneficiary was himself negligent as in *Goldsmith.*

In the instant case recovery does not depend upon establishing the liability of anyone but defendant-wife-mother. Recovery here is not grounded on establishing the liability of the father who is neither a party defendant nor one through whom the liability of the defendant is sought to be established.

This case, therefore, is controlled by *Foster v. Foster,* 264 N.C. 695, 142 S.E. 2d 638 (1965). *Foster* was a civil action by husband against his wife to recover medical expenses he had expended on their infant child after the child was injured while riding as a passenger in an automobile being operated by the wife-mother. The parties stipulated the mother's negligence caused the collision resulting in the child's injuries and that the

plaintiff-father was not present at the collision. The parties further stipulated that the father owned the automobile being operated by the mother and maintained it as a family purpose automobile. This Court, in a thoroughly considered opinion by Justice (later Chief Justice) Parker, affirmed a judgment for plaintiff against the contention, among others, that the husband's action should be barred because, under the family purpose doctrine, his wife's negligence under the circumstances presented would be imputed to him. In rejecting this argument, the Court said:

> The agreed facts are sufficient to invoke the family car purpose doctrine. In *Smith v. Simpson*, 260 N.C. 601, 133 S.E. 2d 474, it is said: 'The very genesis of the family purpose doctrine is agency. The question of liability for negligent injury must be determined in that aspect.' It seems clear from the agreed statement of facts that at the time of the injuries to Pamela Sue Foster defendant was the agent of plaintiff, and was acting within the scope of her authority as his agent. It has been held (or assumed) in many cases that, in the absence of waiver or estoppel on his part, a principal or master has a right of action against the agent or servant for loss or damage resulting to the principal or master which has proximately resulted from the agent's or servant's negligence. 3 C.J.S., Agency, § 286, (a); Annot. 110 A.L.R. 832, where many cases are cited, including one from North Carolina. What was said by Ervin, J., writing the majority opinion in *Rollison v. Hicks*, 233 N.C. 99, 63 S.E. 2d 190, in respect to actions brought by the master against the servant to recover for injuries suffered by the former as a result of the latter's actional negligence is also applicable to similar actions brought by a principal against his agent. Justice Ervin said:
>
>> 'The doctrine of imputed negligence has no application, however, to actions brought by the master against the servant to recover for injuries suffered by the former as a result of the latter's actionable negligence. * * *
>>
>> '* * * But it would offend justice and right to impute the negligence of a servant to his master and thus exempt him from the consequences of his own wrong-doing where the negligence proximately causes injury to a master who is without personal fault.'

According to the agreed facts 'plaintiff was not present at the time of the said collision.' There is no waiver or estoppel on his part in the instant case. He was not in the automobile at the time of the collision, and that is another reason why his wife's negligence cannot be imputed to him. 65 C.J.S., Negligence, § 168, (f).

*Id.* at 699-700, 142 S.E. 2d at 642-43.

The result here must be the same as in *Foster*. The husband-father is not barred from sharing in any recovery by his son's estate because defendant-wife-mother's negligence cannot be imputed to him for this purpose under the family purpose doctrine. The doctrine is essentially a means for establishing liability of responsible parties on a theory of *respondeat superior* whereby the responsible party is the principal and the party actively negligent is agent. *Foster* establishes that the doctrine may not be used to bar an action brought by the husband-father against the wife-mother for medical expenses expended on their son. It follows that the doctrine may not be used to deny distribution to the husband-father as beneficiary of his son's estate when the estate's recovery is grounded, if at all, solely on the negligence of the wife-mother.

We are not inadvertent to *Dixon v. Briley*, 253 N.C. 807, 117 S.E. 2d 747 (1961). In *Dixon* two brothers, James B. and Otha Lee, were riding in an automobile when it collided at a railroad crossing with Southern Railway Company's freight train. Apparently Otha Lee was driving and James B. was a passenger. Both were killed in the collision. Their father, Albert, as administrator of James B.'s estate, brought wrongful death action against Otha Lee's estate and Southern Railway Company, alleging that the negligence of Southern Railway and Otha Lee caused the collision. Southern Railway moved to amend its answer. The proposed amendment sought to allege that the automobile was a family purpose car, owned by the father and being operated at the time as a family purpose vehicle; therefore any negligence of the operator of the car would be imputed to the father and would be a bar to any recovery or a bar *pro tanto* to that portion of any recovery which would be distributable to the father. The trial court refused to allow the amendment, concluding that it would not constitute a defense. This Court, in a brief per curiam opinion,

concluded that it was error for the trial court to deny the amend-ment as a matter of law and remanded the matter to permit the trial court to exercise its discretion in determining whether the amendment ought to be allowed. Suffice it to say that the *Dixon* case did not come to grips with the question of whether the plead-ing ultimately would constitute a defense. It held simply that the trial court should not have denied the motion to amend on the ground that the pleading would not constitute a defense. We note further that only appellant Southern Railway appeared when the case was argued in this Court; there was no counsel *contra*. Final-ly, *Dixon* was not referred to in the later *Foster* case which thoroughly considered, and should be considered authoritative on, this question.

The result is this: This action may be maintained on behalf of the child's estate, but only the father-husband will be entitled to share in any recovery. Since any recovery obtained will be grounded on the negligence of defendant-mother-wife, she shall not share in the recovery, if there is any.

IV.

[4] The only remaining problem is how best to accomplish this result in the trial of this proceeding. The cases heretofore dis-cussed resolved the problem by simply letting the wrongful death action proceed to verdict. The verdict was then reduced by the pro rata share of the beneficiary or beneficiaries upon whose liability or negligence the recovery depended and judgment entered accordingly. The recovery was distributed ultimately only to the other beneficiaries of the estate. This procedure worked well under our former wrongful death statutes in effect when these cases were decided.

In 1969 the legislature rewrote a portion of these statutes so as to change significantly the measure of damages recoverable in a wrongful death action. "An Act to Rewrite G.S. 28-174, Relating to Damages Recoverable for Death by Wrongful Act," Chapter 215, 1969 Sess. Laws. The differences in wrongful death damages recoverable before and after the 1969 changes are fully chronicled in *Bowen v. Constructors Equipment Rental Co.*, 283 N.C. 395, 196 S.E. 2d 789 (1973). Essentially, as the *Bowen* opinion demonstrates, damages for death itself under former G.S. 28-174 were limited to the *"present value* of the *net pecuniary worth* of

Carver v. Carver

the deceased based on his life expectancy." *Id.* at 415, 196 S.E. 2d at 803. The damages under this formula were arrived at without consideration of who might share in the recovery or their relationship to the deceased. The focus was solely on the probable worth of the deceased had he lived out his normal life expectancy. "Prior to the 1969 act, whether the relationship between such persons [entitled to the recovery] and the decedent was one of closeness, estrangement or indifference had no bearing upon the amount of the recovery." *Id.*

The 1969 Act, now codified as N.C. Gen. Stat. § 28A-18-2, provides for wrongful death damages as follows:

(b) Damages recoverable for death by wrongful act include:

(1) Expenses for care, treatment and hospitalization incident to the injury resulting in death;

(2) Compensation for pain and suffering of the decedent;

(3) The reasonable funeral expenses of the decedent;

(4) The present monetary value of the decedent *to the persons entitled to receive the damages recovered,* including but not limited to compensation for the loss of the reasonably expected:

a. Net income of the decedent,

b. Services, protection, care and assistance of the decedent, whether voluntary or obligatory, *to the persons entitled to the damages recovered.*

c. Society, companionship, comfort, guidance, kindly offices and advice of the decedent *to the persons entitled to the damages recovered;*

(5) Such punitive damages as the decedent could have recovered had he survived, and punitive damages for wrongfully causing the death of the decedent through maliciousness, wilful or wanton injury, or gross negligence;

(6) Nominal damages when the jury so finds. [Emphasis supplied.]

In this action the damages which plaintiff seeks to recover are: (1) the reasonable funeral expenses of the decedent; (2) compensation for the pain and suffering of the decedent; and (3) the items of damages recoverable under section (b)(4) of the statute. "The first step to determine the damages recoverable under [section (b)(4)] is to identify the particular persons who are entitled to receive the damages recovered." *Bowen*, 283 N.C. at 418, 196 S.E. 2d at 805. In ascertaining the amount of damages recoverable under section (b)(4), the trier of fact must be apprised of those who are going to share in the recovery; for under this section it is only the losses suffered by these persons as a result of the decedent's death which may be taken into account in assessing these damages.

In the present case since only the father-husband will be entitled to share in the recovery, the trier of fact must be so apprised and must take this fact into account in assessing the damages recoverable under section (b)(4). Only the father-husband's losses as a result of the death of the child may be considered and losses to the mother-wife may not be considered in assessing damages under this section. It follows that whatever damages are awarded under this section need not be reduced but are fully recoverable by the estate to be ultimately enjoyed by the father-husband.

Since the reasonable funeral expenses of the decedent are primarily the responsibility of the father-husband, neither should this item of damages be reduced because the mother-wife is precluded from sharing in the recovery.

Damages awarded, if any, for decedent's pain and suffering should, however, be reduced by half, which represents the mother-wife's pro rata share of these damages, under the principles established in our cases.

Instead of a general verdict on damages, these various damages issues arising on each subsection of section (b)(4) should be submitted separately to the jury as special verdicts.

The result is that summary judgment entered for defendant below is reversed and this case is remanded for further proceedings not inconsistent with this opinion.

Carver v. Carver

Reversed and remanded.

Justice MARTIN did not participate in the consideration or decision of this case.

Justice MEYER dissenting.

The well-settled common law of North Carolina does not permit recovery for an unintentional tort between unemancipated minors and their parents. *Gillikin v. Burbage*, 263 N.C. 317, 139 S.E. 2d 753 (1965); *Redding v. Redding*, 235 N.C. 638, 70 S.E. 2d 676 (1952); *Small v. Morrison*, 185 N.C. 577, 118 S.E. 12 (1923). Nor is the personal representative of a deceased unemancipated minor permitted to bring a wrongful death action against a parent of the child. *Skinner v. Whitley*, 281 N.C. 476, 189 S.E. 2d 230 (1972); *Lewis v. Insurance Co.*, 243 N.C. 55, 89 S.E. 2d 788 (1955). Of course there is a very limited exception to the prevailing common law rule in North Carolina created by G.S. § 1-539.21. This statutory exception applies only to personal injury and property damage actions arising solely out of the operation of automobiles owned or operated by the parent. This statute provides as follows:

> The relationship of parent and child shall not bar the *right of action* by a minor child against a parent *for personal injury or property damage* arising out of the operation of a motor vehicle owned or operated by such parent.

(Emphasis added.)

This statute by its own terms creates a limited exception to the prevailing common law rule in North Carolina. It allows a child to sue a parent but not a parent to sue a child. It applies only in motor vehicle cases and then applies only to personal injury and property damage claims. The statute does not mention wrongful death actions. It was extended to cover that classification by the holding in this very case when it was initially before the COA on the dismissal of the administrator's action for failure to state a cause of action. *Carver v. Carver*, 55 N.C. App. 716, 286 S.E. 2d 799, *cert. denied*, 305 N.C. 584 (1982). As is clearly demonstrated in the majority opinion, this Court's denial of defendant's petition for further review did not make that decision of

the Court of Appeals the law of the case in this Court nor does it mean that this Court determined that the decision of the Court of Appeals is correct. I believe that this Court should now hold that G.S. § 1-539.21 does not extend to wrongful death actions, thus the common law continues to apply and this action is barred by the doctrine of parental immunity.

There was, when it was enacted, and there continues to be, good reason for the legislature's omission of wrongful death actions from the provisions of G.S. § 1-539.21. This Court should not extend the statute in the face of strong public policy considerations which augur against it. It is the parents here who are the real parties in interest. The majority has properly barred the wife/mother from recovery as an actual distributee of the proceeds of the action under the maxim that one should not be allowed to profit from his own wrong.

Justice (later Chief Justice) Parker stated the principle in *In re Estate of Ives*, 248 N.C. 176, 181-82, 102 S.E. 2d 807, 811 (1958), as follows:

> In an action to recover damages for wrongful death the real party in interest is the beneficiary under the statute for whom recovery is sought, and not the administrator. *Davenport v. Patrick*, 227 N.C. 686, 44 S.E. 2d 203.

> 'It is a maxim of law, recognized and established, that no man shall take advantage of his own wrong; and this maxim, which is based on elementary principles, is fully recognized in courts of law and equity, and, indeed, admits of illustration from every branch of legal procedure.' Broom's Legal Maxims, Tenth Ed., 191.

> This maxim embodied in the common law, and constituting an essential part thereof, is stated in the text books and reported cases. It has its foundation in universal law administered in all civilized lands, for without its recognition and enforcement by the courts their judgments would rightly excite public indignation. This maxim has been adopted as public policy in this state and we have decided in many cases instituted to recover damages for wrongful death that no beneficiary under the statute for whom recovery is sought will be permitted to enrich himself by his own wrong. *Daven-*

*port v. Patrick, supra; Pearson v. Stores Corp.,* 219 N.C. 717, 14 S.E. 2d 811; *Goldsmith v. Samet,* 201 N.C. 574, 160 S.E. 835; *Harton v. Telephone Co.,* 141 N.C. 455, 54 S.E. 299; *Davis v. R.R.,* 136 N.C. 115, 48 S.E. 591. The right of a person otherwise entitled to receive the money paid for wrongful death, or to share in the distribution of such a sum paid, will be denied where the death of the decedent was caused by such person's negligence. *Davenport v. Patrick, supra; Goldsmith v. Samet, supra.*

While the wife/mother is barred from taking as an actual distributee of the proceeds from this action, I believe it is inescapable that she will indeed benefit from the recovery which resulted from her own wrong. Should the husband/father choose to do so could he not give her some of, or indeed all of, the recovery? Should he die intestate would she not receive benefits under our laws governing intestate succession? Should he die testate could he not will her the funds recovered? Should the marriage terminate without a separation agreement would she not benefit from the recovery through equitable distribution? Should the recovery simply go into the family treasury, which is more likely, would she not benefit?

I believe that the overriding public policy of not allowing one to benefit from his own wrong dictates that the statute not be extended by judicial fiat to wrongful death actions. If the legislature chooses to do so, it may express its intent and will to so extend the statute by appropriate legislation.